## Ginsburg v. Delaware County Board of Law Examiners

*John E. McDonough*, for plaintiff.
*Albert J. Williams*, for defendant.

FRONEFIELD, P. J., June 21, 1937.—This case arises from a petition of Frank I. Ginsburg, praying the court to "issue a writ of alternative mandamus requiring and directing the Delaware County Board of Law Examiners to present to your petitioner a certificate approving his admission to the bar of the Common Pleas Court and of the Orphans' Court of Delaware County, Penna." The court directed an alternative writ to issue as prayed for and it was so issued.

The Delaware County Board of Law Examiners in due time filed their motion to quash the writ, alleging: (1) Mandamus is not the proper procedure for the relief

sought; (2) the alternative writ and petition therefor do not seek to have the board of law examiners act, but act favorably to petitioner; (3) the rules of court vest a discretionary power in the board, and mandamus will not lie to compel it to exercise the discretionary powers in favor of petitioner; (4) the facts set forth in the alternative writ and petition therefor, are insufficient to justify the awarding and issuance of a mandamus.

By the Act of April 14, 1834, P. L. 341, 354, sec. 68, 17 PS§ p. 415, §1602, it is provided:

"The judges of the several courts of record of this Commonwealth shall respectively have power to admit a competent number of persons of an honest disposition, and learned in the law, to practice as attorneys in their respective courts."

"Competent" connected with "number" means adequate, sufficient, suitable. Therefore, before admissions to the bar should be permitted, the court should determine how many comprise a competent number to be admitted to care properly and safely for the work they are likely to be called upon to perform, and at the same time should not admit so many that the community may suffer by the wants of the over-plus, and should also restrict the practice in this county to those who have their principal office therein, to insure safety to clients.

To this end rules 31 and 31(a) were adopted by the court. Rule 31 provides:

"Admissions to the bar of this court are always at the discretion of the court, and will be allowed only upon motion of a member of this bar, in open court, and after compliance with these rules and the regulations from time to time prescribed by the County Board of Law Examiners in furtherance thereof, as evidenced by the certificate of such Board."

Rule 31(a) provides:

"Motions for admission to the Bar shall be made only on the first motion court of the months of April and October of each year and the number to be admitted at such

times will be fixed by special orders of the court to be entered hereafter about three months prior to days fixed for admission. . . . The Board of Law Examiners shall not recommend for admission more applicants than the number so prescribed; and all applications for admission shall be made to said Board at its regular meetings on the first Monday of March and the third Monday of September."

The board of law examiners after their investigations are in a better position to select the applicants for admission than are the judges, but their selections are not binding on the court. The members of that board are amongst the leaders of the bar in every respect and are beyond censure, and it is our policy to uphold their recommendations unless there is a good reason known to us why we should not. The fact that others who applied after the petitioner's application was filed have been selected for admission cannot be controlling, otherwise there would be no real point in having the candidate investigated except for something which should permanently keep him from the bar.

We do not agree as suggested to us that we should admit to practice everyone who was born in Delaware County and is qualified and should also admit a resident of the county who was not born here and does not have his principal office here, but who practices in Philadelphia, because we do not find that to be a fair criterion for admission. Let us now see if we are obliged to issue a writ of mandamus as prayed for, requiring and directing the Delaware County Board of Law Examiners to present to "petitioner a certificate approving his admission to the bar of the Common Pleas Court and of the Orphans' Court of Delaware County".

The petition for mandamus does not deny that the board of law examiners has recommended each time for admission the full number permitted by the court to be selected. In fact he practically admits it by stating in paragraph 11 in his petition:

"That the board of law examiners . . . has not granted a certificate of approval for your petitioner's admission to the bar of the Court of Common Pleas and Orphans' Court of Delaware County, but has granted certificates of approval to persons who have made application for such certificates subsequent in point of time to the application first made by your petitioner."

It is stated in the brief for petitioner:

"In December 1935, pursuant to rule 31 (a) of the rules of the Common Pleas Court of Delaware County, the court decreed that the local board approve three persons, unnamed, for admission to the bar. Three applicants for admission to the bar were granted certificates of approval to practice and petitioner was refused such certificate. These three applicants had applied at the same time as your petitioner."

In June 1936, pursuant to the rule of court, the court decreed that the court should approve two persons, unnamed, for admission to the bar. Two applicants were granted certificates of approval to practice and petitioner was refused such certificate. One of these two applicants had applied at the same time as petitioner and the other had applied after petitioner. In December 1936, pursuant to the rules of court, the court decreed that the court should approve two persons, unnamed, for admission to the bar. Two applicants were granted certificates of approval to practice and petitioner was refused such certificate. Both of the applicants approved had applied after petitioner. One of these applicants approved withdrew his petition. The board then approved another applicant who had applied after petitioner.

While this is outside the record, the brief shows that the board followed the direction of the court in recommending the number so approved.

It is argued that all that the board may pass upon are the qualifications of the applicants under rule 42 of the court, which requires in short, that the applicant has been, or is entitled to be, admitted to the bar of the Su-

preme Court; that he is a citizen of the United States, of full age and of good moral character; that he has been registered as a student at law for three years in the office of the prothonotary of this county; that he has advertised his intention of applying to the board, and that he intends to practice permanently in this county on his own account, and not as a representative of a firm or corporation located outside this county. This rule has nothing to do with the number to be admitted. All who apply for admission must comply with these qualifications, but some who do comply may not be admitted, otherwise there should be no reason for the rule of court or for the board.

It is further argued that, as the board did not assign any reason and did not inform petitioner why others were recommended for admission, he is entitled to know where his deficiency, if any, lies, so that it may be corrected. There is no reason that the board should disclose why they recommended to the court any particular applicant over another.

When the members of the board have done their duty in recommending the required number of applicants as directed by the court, their duty has been fulfilled. The Supreme Court, in an order entered on May 20, 1937, said:

"This court has never compelled a county board to register a law student nor a county court to permit an applicant for admission to the bar to practice before it. These are purely local matters to be passed upon by the county boards or the several local judges. The petition is dismissed, as this court would not compel a county board to register a law student against its own decision in the matter. A county board is not required to divulge its reasons for its action in a particular case, nor is the State board compelled to do likewise": See 28 D. & C. no. 16, appendix, page LXXVIII.

Even though we may issue a mandamus to compel the board to do its duty, that writ will not lie to compel them

to recommend a particular applicant. They have recommended the applicants for all places to be filled. They have shown cause, not why they did not select the applicant, but by recommending to and advising us whom to select to fill the places to be filled, which is all that is required.

In Douglass et al. v. Commonwealth ex rel., 108 Pa. 559, it is stated:

"Where the complaint is against persons who act in a judicial or deliberative capacity they may be ordered by mandamus to proceed to do their duty by deciding and acting according to the best of their judgment; but a Court will not direct them in what manner to decide".

This is true even though they act erroneously and indiscreetly, if they act in good faith. Where the complaint is against persons that have a discretionary or deliberative function to exercise which they did exercise to the best of their judgment the writ of mandamus will not be granted: Commonwealth ex rel. v. Mitchell et al., 82 Pa. 343; Commonwealth v. McLaughlin, 120 Pa. 518; Horowitz v. Beamish, 323 Pa. 273.

Granting that petitioner complied with all the legal requirements to get his petition before the court, his only complaint is that the board of law examiners did not grant him a certificate of approval for his admission to the bar, and he prays the court to compel them to do so. His petition does not sustain its prayer and hence should be quashed: Reese v. Board of Examiners, 248 Pa. 617.

Petitioner has gone outside the record in his brief to sustain his contention. We have used the statements in his arguments also to add weight to respondent's case, which without them is fully sustained.

We have said nothing of who respondent is, as that question is not raised by the pleadings: See Act of June 8, 1893, P. L. 345, sec. 8.

And now June 21, 1937, the writ of alternative mandamus seeking the court to require and direct the Delaware County Board of Law Examiners to present to

Frank I. Ginsburg a certificate approving his admission to the bar of the Common Pleas Court and of the Orphans' Court of Delaware County, Pennsylvania, is hereby quashed.

MACDADE, J.—Honorable W. Roger Fronefield, President Judge of the Court of Common Pleas in and for the County of Delaware, has presented to the undersigned an opinion for his approval, which is proposed to be filed as the expression of this court, and in which Honorable John M. Broomall, 3d, additional law judge, concurs, respecting the filing of a petition in behalf of Frank I. Ginsburg, of the Borough of Marcus Hook, in which he prays the court to "issue a writ of alternative mandamus requiring and directing the Delaware County Board of Law Examiners to present to your petitioner a certificate approving his admission to the Bar of the Common Pleas Court and of the Orphans' Court of Delaware County, Penna."

We have read the averments of the petition and the answer thereto filed by Albert J. Williams, Esq., presumably representing our board of law examiners, very carefully, and have pondered well the purport of the said opinion wherein the writ of alternative mandamus seeking the court to require and direct the Delaware County Board of Law Examiners to present to Frank I. Ginsburg a certificate approving his admission to the bar of the Common Pleas Court and of the Orphans' Court of Delaware County, Pennsylvania, is ordered to be quashed.

We concur in the conclusion to quash the writ of mandamus, for it does not permit, according to the prayer of the petition, the exercise of the said board of examiners' discretion to receive or reject petitioner's application for admission to the above courts to practice law. It is true that the board has a discretionary or deliberative function to exercise and the regret is that this board does not meet the issue squarely and that this petition must be dismissed for technical legal reasons. Audi alteram partem (hear the other side).

As a judge of this court, by the Act of April 14, 1834, supra, we have the power to admit a competent number of persons of honest disposition, and learned in the law, to practice as attorneys in our respective courts, of which we are members, irrespective of any recommendation or nonrecommendation of the said board; in other words, as has frequently been done, a judge may admit such person to membership upon motion at the bar of the court, exempli gratia, as our distinguished President Judge Thomas J. Clayton did in admitting the then prothonotary and a distinguished war veteran, Isaac Johnson, "on sight", and the latter subsequently became president judge of this court.

With that power invested in us, we took occasion on November 13, 1936, to write a distinguished member of the said board respecting the application for membership of this petitioner and on November 17, 1936, there was a reply thereto, the letter and reply thereto being as follows:

"November 13, 1936.

"Harold L. Ervin, Esquire,
"Media, Delaware County,
"Pennsylvania.
"Dear Mr. Ervin:

"I intended to drop in to see you to ask you what is being done with the application of young Ginsberg, of Marcus Hook, who has been applying for favorable consideration at the hands of the examining board.

"We have agreed that at least two members shall be admitted to the bar in December or June and would you mind letting me know if there is any objection to recommending Ginsberg.

"I understand his name is Harry Ginsberg and that he lives at Marcus Hook and that he bears a very excellent reputation. I think he was one of my appointees to one of the colleges on a senatorial scholarship and he must have been all right or he would not have been appointed then.

"Yours very truly,
"A. D. MacDade."

"Delaware County Board of Law Examiners

"George T. Butler                  Harold L. Ervin
  "Chairman                Secretary & Treasurer
                              "11 South Olive St.
                              "Media, Penna.

"E. Wallace Chadwick
"J. DeHaven Ledward
"Henry Jones
"Harold L. Ervin

                          "November 17, 1936.

"Hon. A. D. MacDade,
"Media, Penna.

"Dear Judge:

"I acknowledge receipt of your letter of November 13 re inquiry as to status of Ginsburg for admission. Ginsburg has been before the board three times and each time other persons have been recommended.

"The board endeavors to pick the best applicants out of the group which come before it for admission. I have no doubt that Harry Ginsburg bears a favorable reputation. The court has fixed two as the number to be recommended at the next meeting. The following will probably be before us at that meeting: Joseph Wm. deFuria, Charles A. Greene, George Berkowitz, George Howard Merker, John Wesley Rhoads, W. W. Crawford, Raymond R. Start, Wm. Reese Scott, 3d.

"There may be others before us that I do not have on my list. You can see the very difficult task which faces the board in trying to pick the two best men out of this group. I know that Mr. Ginsburg will receive every consideration by the board but I cannot tell you whether he will be successful when he is measured with the other applicants and the two best applicants selected.

                     "Very truly yours,
                         "Harold L. Ervin,
                               "Secretary."

It will be observed that the latter letter speaks of this

applicant in the following language: "I have no doubt that Harry Ginsburg bears a favorable reputation".

However, in view of this exchange of letters, there is nothing before us that the board has acted upon this application. Why does it not act to accept or reject?

We have had occasion before to express our dissent to the majority opinion of this court, when, on or about August 30, 1935, the majority members thereof filed an order refusing for the reasons therein contained, further admissions to the bar of persons who have qualified under the law and the rules of the State Supreme Court and of this court, and proven their qualifications as well. Subsequently this rule was relaxed and we have since been admitting from time to time (see orders filed) applicants into full membership.

At that time we said and we reiterate in the instant case that while it may be advisable at times to exercise the undoubted power of limitation to be placed upon such membership, yet I cannot concur at this time in the exclusion of all applicants because of the numerical strength of the bar rather than consider as well the qualitativeness of the situation pertaining to such applicants.

The entire membership of the Delaware County bar should first be canvassed and proper questionnaires propounded respecting the advisability of further admissions to the bar rather than the court taking the initiative exclusive of or in conjunction with the advice and judgment of the board of law examiners, the court thus to give their recommendations due consideration in forming a judgment therein.

And it is equally objectionable so to limit the admissions that the membership is decreased, disregarding the depletion of the ranks by death and removal and nonpracticing attorneys, by the considerable increase in our population, by commerce and business activities, and the hundreds of laws passed and the many governmental bureaus created recently requiring the services and legal skill of members of the legal profession.

Let us conclude, therefore, in part, by quoting what we have said heretofore:

"3. While generally speaking the bar (not confining ourselves exclusively to local conditions) may have a large complement in its membership and some thereof are in distress during the present industrial, financial and economic debacle; and while, as in an adjoining county, others may be tempted by the crowded condition of the bar to commercialize the practice of law and defame its good name, yet we cannot satisfy our conscience that each and every local applicant should be denied admission to practice in an ideal and ennobling profession because of the numerical strength of our bar at least. If this course be permanently pursued individual initiative is destroyed and the door of opportunity is closed to some of the finest and most outstanding of our youth whose character and attainment would adorn any profession. There would not be any Abraham Lincolns, and John G. Johnsons, any William I. Schaffers, and many others, at our bar who have typified always the best traditions of American citizenship and accepted as poor but ambitious youth, budding into manhood, the opportunity of full membership with their brethren at the bar into our professional ranks, and the success which followed their course stand them out as legal luminaries of the highest order and of whose records we are justly proud. Who knows but that today we are excluding from our ranks the most worthy successors to these notable characters?

"4. Lastly, we feel that it is a genuine mistake to deny a qualified applicant admission to our bar when he has in early life in molding a career chosen the profession of the law; that, just when he has labored successfully for years to meet all the requirements of the probationary period and is of good moral character, he comes forth expectant of being crowned with the laurels of victory, perhaps in the presence of sacrificing parents, well-wishing friends or standing alone as self-made, the fruits of victory are snatched from him. If there is to be regulation

as to the number of lawyers to practice at the bar, it should have its inception when the novitiate appears for early instruction, not to permit him to pursue a law course and then put the bars up to retard his progress to a realization of his fondest wishes at a time when he manfully presents his credentials for admission to the end that a laudable ambition be then gratified in the fulfillment of a mission in life."

Listen to Dr. Chevalier Jackson, eminent bronchoscopist and president of the Woman's Medical College, who says in speaking of the suggested limitation of student enrollment in medical colleges, allegedly to prevent overcrowding in the medical profession, as follows:

"I am vehemently opposed to such restrictions. . . . I believe the more women and men in medicine the better for medical science and for humanity."

We adopt this statement as an expression of the naked truth of a noble sentiment in which we fully concur, and appropriately fitting to the occasion which prompts this opinion ex necessitate rei.